UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER,<br><br>  Plaintiff,<br><br>  v.<br><br>DEMITRIOUS GROUBS, et al.,<br><br>  Defendants. | No. 2:23-cv-2770 DJC CSK P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

**I. INTRODUCTION**

Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and is proceeding in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

Pending before the court is defendant Grubbs' motion to revoke plaintiff's in forma pauperis status pursuant to 28 U.S.C. § 1915(g). (ECF No. 29.) For the following reasons, this Court recommends that defendant's motion be denied and that plaintiff's request for injunctive relief in plaintiff's complaint be dismissed as moot. For the following reasons, plaintiff is granted thirty days from the adoption of these findings and recommendations by the district court to file an amended complaint raising his Eighth Amendment and retaliation claims against defendant Grubbs and a request for damages.

///

1

## II. PLAINTIFF'S COMPLAINT

This action proceeds on plaintiff's complaint, filed November 26, 2023 pursuant to the mailbox rule,[1] against defendant Demitrious Grubbs, a psychiatrist at California State Prison-Sacramento ("CSP-Sac"), as to plaintiff's retaliation and Eighth Amendment inadequate medical care claims based on defendant's alleged attempt to have plaintiff involuntarily medicated with Risperidone. (ECF Nos. 1, 10.) Plaintiff alleges that plaintiff was sexually assaulted by CSP-Sac correctional officers on May 23, 2023. (ECF No. 1 at 4.) Plaintiff voiced his concerns regarding the alleged assault to the mental health staff at the Treatment Team Committee on June 6, 2023. (Id.) Plaintiff later filed a grievance based on the failure of the staff to protect him from retaliatory treatment by his abusers. (Id.) Plaintiff alleges that he began receiving false rules violation reports in an attempt to have plaintiff viewed as violent and aggressive. (Id. at 5.)

On October 5, 2023, plaintiff attended another Treatment Team meeting. (Id.) Plaintiff told the committee about the ongoing abuses. (Id.) During this meeting, defendant Grubbs burst out laughing at plaintiff. (Id.) On November 4, 2023, plaintiff filed a grievance raising, in part, his claims regarding defendant Grubbs' behavior at the October 5, 2023 meeting. (Id. at 6-13.) In this grievance, plaintiff also claimed that defendant Grubbs initiated proceedings pursuant to California Penal Code § 2602 to have plaintiff involuntarily medicated in order to prevent plaintiff from reporting the sexual assaults to the Office of the District Attorney.[2] (Id. at 12.)

Plaintiff was advised that he would be taken to the Section 2602 hearing on November 29, 2023. (Id. at 14.) Plaintiff has a personality disorder that cannot be treated with anti-psychotic medication. (Id.) Plaintiff claims that defendant Grubbs stated that she was seeking to force plaintiff to take Risperidone, a drug that has no effect on personality disorders. (Id. at 16.) Plaintiff alleges that defendant Grubbs stated that she did not want plaintiff to take Risperidone in order to aid plaintiff to function at a plateau, but to stop plaintiff from bringing lawsuits. (Id.)

---

[1] Under the mailbox rule, the filing date is the date a prisoner delivers his complaint to prison officials for mailing. Houston v. Lack, 487 U.S. 266, 273 (1988). Plaintiff deposited his complaint in the mail in Folsom State Prison on November 26, 2023. (ECF No. 1 at 29.)

[2] California Penal Code § 2602 contains procedures for the administration of psychiatric medication to prisoners without consent.

Plaintiff alleges that defendant Grubbs sought to force plaintiff to take medication that would prevent plaintiff from forming thoughts and being able to draft complaints. (Id.) Plaintiff alleges that plaintiff has a heart condition and that a side effect of Risperidone is fast or irregular pulse that can cause plaintiff's death. (Id.) Plaintiff alleges that defendant Grubbs wants to prevent plaintiff from reporting ongoing sexual abuse. (Id. at 17.)

As relief, plaintiff requests that the Court order the postponement of the Section 2602 hearing and show cause why the hearing is justified. (Id. at 19-20.)

**III. BACKGROUND**

Plaintiff filed his complaint on November 26, 2023. (ECF No. 1 at 29.) On December 21, 2023, the Court issued an order screening plaintiff's complaint. (ECF No. 6.) The Court found that plaintiff's complaint stated potentially colorable retaliation and Eighth Amendment claims against defendant Grubbs based on defendant's alleged attempt to have plaintiff involuntarily medicated with Risperidone. (Id.) The Court dismissed with leave to amend plaintiff's failure-to-protect claim against defendant Grubbs and the claims against defendants Warden Lynch and the Secretary of California Department of Corrections and Rehabilitation ("CDCR"). (Id. at 4-5.) On January 8, 2024, plaintiff informed the Court that he wished to proceed with only the potentially colorable retaliation and Eighth Amendment claims against defendant Grubbs raised in the complaint. (ECF No. 9.) Plaintiff dismissed the failure-to-protect claim against defendant Grubbs and all claims against defendants Lynch and the Secretary of CDCR without prejudice. (Id.) On January 10, 2024, the Court ordered service of defendant Grubbs. (ECF No. 10.)

On March 14, 2024, the Court referred this action to the Post-Screening ADR Project. (ECF No. 19.) On May 15, 2024, the Court granted defendant's motion to opt out of the Post-Screening ADR Project and ordered defendant to file a response to plaintiff's complaint within thirty days. (ECF No. 24.) On May 23, 2024, the Court granted defendant a thirty day extension of time to file a response to plaintiff's complaint. (ECF No. 26.) On July 11, 2024, defendant filed the pending motion to revoke plaintiff's in forma pauperis status pursuant to 28 U.S.C. §1915(g). (ECF No. 29.) On August 5, 2024, plaintiff filed an opposition to defendant's motion. (ECF No. 30.) On August 13, 2024, defendant filed a reply to plaintiff's

opposition. (ECF No. 32.)

This Court also observes that during the pendency of this action, plaintiff filed two motions for injunctive relief. On February 15, 2024, plaintiff filed his first motion for injunctive relief. (ECF No. 16.) In this motion, plaintiff requested that the Court order CDCR to retain plaintiff at CSP-Sac in the PHU-Z Unit until a formal hearing could be held. (Id. at 1.) Plaintiff also claimed that the Court refused to rule on his motion for injunctive relief filed in case no. 2:20-cv-1890 KJM JDP P. (Id. at 4.) On April 11, 2024, the Court denied plaintiff's motion for injunctive relief filed in this action (No. 2:23-cv-2770 DJC CSK P) on February 15, 2024. (ECF No. 21.)

On June 25, 2024, plaintiff filed his second motion for injunctive relief. (ECF No. 27.) In this motion, plaintiff alleged that on January 24, 2024 a hearing was held at CSP-Sac pursuant to California Penal Code § 2602. (Id. at 3.) Plaintiff alleged that the administrative court denied the request for his involuntary medication, brought in part by defendant Grubbs, due to "no prima facie case." (Id.) Plaintiff also alleged that since May 9, 2024, he had been held in a hospital crisis bed, apparently at Kern Valley State Prison. (Id. at 6.) Plaintiff alleged that there were plans to send plaintiff to acute treatment and to renew the Section 2602 petition. (Id.) Plaintiff alleged that the Vitek hearing to send plaintiff to acute treatment was to be held on June 19, 2024.[3] (Id. at 7.) As relief, plaintiff requested that the Court order the Secretary of CDCR to forego "any and all Penal Code § 2602 proceedings and/or transferring of plaintiff to hospital for mental health treatments." (Id.)

On June 27, 2024, this Court recommended that plaintiff's second motion for injunctive relief filed June 25, 2024 be denied. (ECF No. 28.) This Court observed that plaintiff was no longer housed at CSP-Sac, where defendant Grubbs was located and the misconduct alleged in the complaint occurred. (Id. at 3-4.) This Court also observed that CDCR records indicated that plaintiff was now housed at the California Medical Facility. (Id. at 4.) This Court recommended

---

[3] In Vitek v. Jones, 445 U.S. 480, 493-96 (1980), the Supreme Court held that an involuntary transfer of a state prisoner to a state mental hospital implicated his liberty interests under the Due Process Clause of the Fourteenth Amendment sufficient to require certain procedural safeguards prior to transfer.

4

that plaintiff's second motion for injunctive be denied because plaintiff sought injunctive relief against the Secretary of CDCR, who is not a party to this action. See Zenith v. Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969). (Id. at 5.) This Court also rejected plaintiff's request for use of the All Writs Act because plaintiff's motion appeared moot, at least in part, because plaintiff was transferred from Kern Valley State Prison to the California Medical Facility rather than to a state mental hospital and because the date passed for the June 19, 2024 hearing identified in the motion. (Id.) In addition, the pending motion was not based on conditions at the California Medical Facility, but conditions at Kern Valley State Prison. (Id.) The June 27, 2024 findings and recommendations are now pending in the district court.

On August 16, 2024, this Court ordered plaintiff to show cause within thirty days why this action should not be dismissed as moot. (ECF No. 33.) In this order, this Court observed that plaintiff's complaint sought injunctive relief only. (Id. at 5.) In the complaint, plaintiff requested that the Court order the postponement of the Section 2602 hearing requested by defendant Grubbs at CSP-Sac and for defendant Grubbs to show cause why the hearing is justified. (Id. at 5-6.) In the August 16, 2024 order, this Court observed that plaintiff was no longer housed at CSP-Sac, where defendant Grubbs was located and the alleged deprivations occurred. (Id. at 6.) Moreover, in his June 25, 2024 motion for injunctive relief, plaintiff alleged that on January 24, 2024 a hearing was held at CSP-Sac pursuant to California Penal Code § 2602. (Id.) Plaintiff alleged that at the January 24, 2024 hearing, the administrative court denied the request for plaintiff's involuntary medication, brought in part by defendant Grubbs, due to "no prima facie case." (Id.) Based on these circumstances, this Court ordered plaintiff to show cause why this action should not be dismissed as moot. (Id.)

On September 12, 2024, plaintiff filed a response to the order to show cause. (ECF No. 34.) This pleading reflects that plaintiff is now housed at California State Prison-Los Angeles. (Id. at 1.) In this pleading, plaintiff alleges that although he is no longer housed at CSP-Sac, the Section 2602 proceedings were "simply taken up at [the California Medical Facility] using the same filing/petition from [Kern Valley State Prison]." (Id. at 3.) Plaintiff alleges that there is a state mental hospital within the California Medical Facility, and that is where he was transferred

from Kern Valley State Prison. (Id. at 4.) Plaintiff alleges that at the state hospital within the California Medical Facility, CDCR Secretary Macomber and his office "acted to pick up where Grubbs and Kern Valley State Prison left off, using the very same facts." (Id.) Plaintiff alleges that the Section 2602 proceedings initiated at Kern Valley State Prison followed plaintiff to the California Medical Facility, where it resulted in plaintiff being forcefully medicated on June 27, 2024 by Dr. Virk. (Id.) Plaintiff alleges that he is still being forcefully medicated at California State Prison-Los Angeles, where he is now housed. (Id.) Plaintiff alleges that the psychiatrist at California State Prison-Los Angeles does not agree with Dr. Virk and declines to place plaintiff on a stronger medication. (Id. at 5.) Plaintiff alleges that the medication he is currently involuntarily administered is Zyprexa. (Id.)

In his response to the order to show cause, plaintiff observes that in the order screening his complaint filed in the instant action, the Court dismissed with leave to amend the claims against CDCR Secretary Macomber and CSP-Sac Warden Lynch with leave to amend. (Id. at 2, 6.) Plaintiff admits that he chose not to amend his complaint and to instead proceed on the potentially colorable claims against defendant Grubbs. (Id.) Plaintiff states that if granted leave to amend, he will add claims against those persons, who to date, have forcibly medicated plaintiff. (Id. at 6.) Plaintiff alleges that in an amended complaint, he will seek money damages and injunctive relief. (Id.)

### IV. DEFENDANT'S MOTION TO REVOKE PLAINTIFF'S IN FORMA PAUPERIS STATUS

**A. Legal Standards for Motion Brought Pursuant to 28 U.SC. § 1983**

The Prison Litigation Reform Act of 1995 ("PLRA") permits a federal court to authorize the commencement and prosecution of any suit without prepayment of fees by a person who submits an affidavit demonstrating that the person is unable to pay such fees. However, 28 U.S.C. § 1915(g) states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or

6

> fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Id. "It is well-settled that, in determining a [Section] 1915(g) 'strike,' the reviewing court looks to the dismissing court's action and the reasons underlying it." Knapp v. Hogan, 738 F.3d 1106, 1109 (9th Cir. 2013) (brackets added) (citation omitted). "[Section] 1915(g) should be used to deny a prisoner's in forma pauperis status only when, after careful evaluation of the order dismissing an action, and other relevant information, the district court determines that the action was dismissed because it was frivolous, malicious or failed to state a claim." Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2006) (brackets added). "[W]hen a district court disposes of an in forma pauperis complaint 'on the grounds that [the claim] is frivolous, malicious, or fails to state a claim upon which relief may be granted,' such a complaint is 'dismissed' for purposes of § 1915(g) even if the district court styles such dismissal as denial of the prisoner's application to file the action without prepayment of the full filing fee." O'Neal v. Price, 531 F.3d 1146, 1153 (9th Cir. 2008). Dismissal also counts as a strike under § 1915(g) "when (1) a district court dismisses a complaint on the ground that it fails to state a claim, (2) the court grants leave to amend, and (3) the plaintiff then fails to file an amended complaint" regardless of whether the case was dismissed with or without prejudice. Harris v. Mangum, 863 F.3d 1133, 1142-43 (9th Cir. 2017).

An inmate who accrues three strikes is precluded from proceeding in forma pauperis unless he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). To satisfy the exception, plaintiff must have alleged facts that demonstrate that he was "under imminent danger of serious physical injury" at the time of filing the complaint. Andrews v. Cervantes, 493 F.3d 1047, 1053 (9th Cir. 2007) ("[I]t is the circumstances at the time of the filing of the complaint that matters for purposes of the 'imminent danger' exception to § 1915(g)."). "[T]he imminent danger exception to the PLRA three-strikes provision requires a nexus between the alleged imminent danger and the violations of law alleged in the complaint." Ray v. Lara, 31 F.4th 692, 695 (9th Cir. 2022).

///

**B. Plaintiff's Prior Strikes**

In support of the pending motion, defendant requests that the Court take judicial notice of court records related to cases defendant cites as strikes pursuant to Section 1915(g). (ECF No. 29-1.) Defendant's request for judicial notice of these court records is granted. See Fed. R. Evid. 201(b)(2); United States ex re. Robinson Rancheria Citizens Counsel v. Borneo, 971 F.2d 244, 248 (9th Cir. 1992) (quoting St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'").

Defendant cites the following four cases as strikes pursuant to Section 1915(g). First, defendant cites Hammler v. State of California, 1:20-cv-0630 DAD GSA (E.D. Cal. Oct. 30, 2020), dismissed on October 30, 2020 for failure to exhaust administrative remedies, which was evident from the face of the complaint.[4] (ECF No. 29-2 at 2-8.) Second, defendant cites Hammler v. Hough, et al., 3:18-cv-1319 LAB BLM (S.D. Cal. May 24, 2019), dismissed on May 24, 2019 for failure to state a claim. (Id. at 25.) Third, defendant cites Hammler v. Kernan, et al., 3:18-cv-1170 DMS NLS (S.D. Cal. Dec. 10, 2018), dismissed on December 10, 2018 for failure to state a claim. (Id. at 34.) Fourth, defendant cites Hammler v. Director of CDCR, et al., 17-cv-0097 NJV (N.D. Cal. Apr. 17, 2017), dismissed on April 17, 2017 for plaintiff's failure to file an amended complaint after the court dismissed the original complaint for failure to state a claim.[5] (Id. at 38-46.)

This Court finds that plaintiff has four strikes pursuant to Section 1915(g) based on the four cases cited by defendant. Each prior case was dismissed before the instant action was filed on November 26, 2023, and none of the strikes have been overturned. In addition, this Court observes that several courts have found plaintiff to have three prior strikes pursuant to Section

---

[4] See El-Shaddai v. Zamora, 833 F.3d 1036, 1044 (9th Cir. 2016) (a dismissal for failure to exhaust administrative remedies counts as a strike dismissal under Section 1915(g) if the failure to exhaust is clear from the face of the complaint).

[5] See Harris v. Mangum, 863 F.3d 1133, 1143 (9th Cir. 2017) ("[W]hen (1) a district court dismisses a complaint on the ground that it fails to state a claim, (2) the court grants leave to amend, and (3) the plaintiff then fails to file an amended complaint, the dismissal counts as a strike under § 1915(g).").

1915(g).  See Hammler v. Dignity Health, 1:20-cv-1778 JLT HBK (E.D. Cal. Jan. 24, 2022); Hammler v. California, 1:20-cv-0630 DAD GSA (E.D. Cal. June 4, 2020); Hammler v. Diaz, 1:20-cv-0488 JLT (E.D. Cal. Dec. 10, 2020); Hammler v. Compose, 1:19-cv-1149 DAD GSA (E.D. Cal. Dec. 18, 2019).  Thus, this Court finds that plaintiff is precluded from proceeding in forma pauperis unless he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

**C. Imminent Danger**

Defendant argues that the allegations in the complaint do not demonstrate that plaintiff meets the imminent danger exception to Section 1915(g).  Defendant first argues that plaintiff fails to meet the imminent danger exception to Section 1915(g) because CDCR is required by California Penal Code § 2602 to seek a court order from an administrative law judge authorizing the administration of long term involuntary psychotropic medication to individuals confined within the jurisdiction of CDCR who, as a result of a mental disorder, are a danger to others or to themselves or are gravely disabled and incompetent to refuse medication.  (ECF No. 29 at 11.) Defendant argues that "[i]n other words, the danger [plaintiff] alleges is that a doctor, following a statutory procedure adopted by the California Legislature to protect inmates and others from harm, may apply to have [plaintiff] medicated, if the process provided by law is followed.  At that point, by law, an administrative law judge, not Defendant Grubbs, decides whether or not to issue such an order."  (Id.)  Defendant contends that an administrative law judge, not defendant Grubbs, determined whether to involuntarily prescribe plaintiff Risperidone.  (Id. at 12.)  In support of this argument, defendant cites part of California Penal Code § 2602:

> (c) The Department of Corrections and Rehabilitation may seek to initiate involuntary medication on a nonemergency basis only if all of the following conditions have been met:
>
> (1) A psychiatrist has determined that the inmate has a serious mental disorder.
>
> (2) A psychiatrist has determined that, as a result of that mental disorder, the inmate is gravely disabled and does not have the capacity to refuse treatment with psychiatric medications or is a danger to self or others.
>
> (3) A psychiatrist has prescribed one or more psychiatric medications

9

for the treatment of the inmate's disorder, has considered the risks, benefits, and treatment alternatives to involuntary medication, and has determined that the treatment alternatives to involuntary medication are unlikely to meet the needs of the patient.

(4) The inmate has been advised of the risks and benefits of, and treatment alternatives to, the psychiatric medication and refuses or is unable to consent to the administration of the medication.

(5) The inmate is provided a hearing before an administrative law judge.

(6) The inmate is provided counsel at least 21 days prior to the hearing, unless emergency or interim medication is being administered pursuant to subdivision (d), in which case the inmate would receive expedited access to counsel. The hearing shall be held not more than 30 days after the filing of the notice with the Office of Administrative Hearings, unless counsel for the inmate agrees to extend the date of the hearing.

(7) The inmate and counsel are provided with written notice of the hearing at least 21 days prior to the hearing, unless emergency or interim medication is being administered pursuant to subdivision (d), in which case the inmate would receive an expedited hearing. The written notice shall do all of the following:

(A) Set forth the diagnosis, the factual basis for the diagnosis, the basis upon which psychiatric medication is recommended, the expected benefits of the medication, any potential side effects and risks to the inmate from the medication, and any alternatives to treatment with the medication.

(B) Advise the inmate of the right to be present at the hearing, the right to be represented by counsel at all stages of the proceedings, the right to present evidence, and the right to cross-examine witnesses. Counsel for the inmate shall have access to all medical records and files of the inmate, but shall not have access to the confidential section of the inmate's central file which contains materials unrelated to medical treatment.

(C) Inform the inmate of his or her right to contest the finding of an administrative law judge authorizing treatment with involuntary medication by filing a petition for writ of administrative mandamus pursuant to Section 1094.5 of the Code of Civil Procedure, and his or her right to file a petition for writ of habeas corpus with respect to any decision of the Department of Corrections and Rehabilitation to continue treatment with involuntary medication after the administrative law judge has authorized treatment with involuntary medication.

(8) An administrative law judge determines by clear and convincing evidence that the inmate has a mental illness or disorder, that as a result of that illness the inmate is gravely disabled and lacks the capacity to consent to or refuse treatment with psychiatric medications or is a danger to self or others if not medicated, that there

>is no less intrusive alternative to involuntary medication, and that the medication is in the inmate's best medical interest. Failure of the department to provide timely or adequate notice pursuant to this section shall be excused only upon a showing of good cause and the absence of prejudice to the inmate. In making this determination, the administrative law judge may consider factors, including, but not limited to, the ability of the inmate's counsel to adequately prepare the case and to confer with the inmate, the continuity of care, and, if applicable, the need for protection of the inmate or institutional staff that would be compromised by a procedural default.
>
>(9) The historical course of the inmate's mental disorder, as determined by available relevant information about the course of the inmate's mental disorder, shall be considered when it has direct bearing on the determination of whether the inmate is a danger to self or others, or is gravely disabled and incompetent to refuse medication as the result of a mental disorder.
>
>(10) An inmate is entitled to file one motion for reconsideration following a determination that he or she may receive involuntary medication, and may seek a hearing to present new evidence, upon good cause shown.

Cal. Penal Code § 2602.

For the following reasons, this Court is not persuaded by defendant's argument that plaintiff cannot meet the imminent danger exception to Section 1915(g) because an administrative law judge decides whether plaintiff should be involuntarily administered Risperidone rather than defendant. Administrative law judges do not prescribe medication. Administrative law judges make their decisions regarding involuntary medication based on information received from prison officials, such as defendant. This Court also observes that in Bradford v. Marchak, 667 Fed. Appx. 616, 617 (9th Cir. 2016), the Ninth Circuit reversed a district court order revoking in forma pauperis status pursuant to 42 U.S.C. § 1915(g) based on findings that the plaintiff plausibly alleged "imminent danger of serious physical injury" based on allegations of chest pain, dizziness, blurred vision and headaches from ongoing involuntary psychiatric medication, presumably administered following a Section 2602 hearing before an administrative law judge. See also Driver v. Kern County Superior Court, 2021 WL 3488001, at *2-*5 (E.D. Cal. Jul. 15, 2021), findings and recommendation adopted, 2021 WL 4894301 (E.D. Cal. Oct. 20, 2021) (finding that plaintiff met imminent danger exception to Section 1915(g) based on side effects plaintiff allegedly suffered as a result of medication involuntarily prescribed, and rejecting

11

argument that plaintiff could not meet imminent danger exception because Section 2602 requires consideration of side effects of prescribed medication).

Moreover, it is not clear from California Penal Code § 2602 that an administrative law judge considering a request for involuntary medication necessarily makes specific findings regarding the medication requested to be administered. See Driver v. Kern County Superior Court, 2023 WL 3340887, at *16 (E.D. Cal. May 10, 2023), findings and recommendations adopted, 2023 WL 4209550 (E.D. Cal. Jun. 27, 2023) ("In [finding that defendants are not immune from plaintiff's claim that they disregarded his complaints regarding the side effects of Invega] the undersigned observes that in the petition to renew the expiring Keyhea,[6] order, defendant Rauf requested that plaintiff be administered Invega.  (ECF No. 215-6 at 6.)  The April 7, 2020 order granted defendants the authority to administer psychiatric medication and does not specifically mention Invega.  (ECF No. 215-5 at 29-31.)  Therefore, it does not appear that the April 7, 2020 order specifically authorized the administration of Invega.").

Defendant next argues that plaintiff's only argument that the potential involuntary prescription of Risperidone would cause a substantial imminent danger if prescribed is based on plaintiff's contentions that the medication will prevent plaintiff from forming thoughts and being able to draft complaints and that the medication will interfere with plaintiff's heart condition. (ECF No. 29 at 14.)  Defendant contends that plaintiff makes this complaint despite the fact that the medical records he attaches to the complaint indicate that plaintiff was previously prescribed Risperidone.  (Id.)  Defendant also argues that plaintiff's argument that Risperidone interferes with his heart condition is supported only by a list of possible side effects for the medication of Risperidone, attached to the complaint.  (Id.)  Defendant argues that plaintiff's complaints of possible side effects from Risperidone are speculative and hypothetical.  (Id.)

This Court agrees with defendant that plaintiff's claim that Risperidone could prevent plaintiff from forming thoughts and drafting complaints is speculative and hypothetical.  See

---

[6] Orders for involuntary medication of inmates in California are also known as Keyhea orders. See Espinoza v. Warden, San Quentin State Prison, 2023 WL 6164270, at *2 (E.D. Cal. Sept. 21, 2023).

12

Andrews, 493 F.3d at 1057 n. 11 ("[A]ssertions of less obviously injurious practices may be rejected as overly speculative or fanciful."). However, this Court does not agree with defendant's argument that plaintiff's claim that Risperidone could interfere with plaintiff's heart condition is speculative and/or hypothetical. As stated above, plaintiff alleges that he has a heart condition and that a side effect of Risperidone is a fast or irregular pulse, that could be deadly to plaintiff. In support of this claim, plaintiff refers to a document attached to his complaint, titled as from the National Institutes of Health/National Library of Medicine, discussing Risperidone. (ECF No. 1 at 22-28.) This document states, in relevant part, that before taking Risperidone "tell your doctor" if you have angina (chest pain), irregular heartbeat, high or low blood pressure, heart failure, a heart attack, or heart disease. (Id. at 23.) This document also lists fast or irregular pulse as a side effect of Risperidone. (Id. at 26.) This document states that anyone taking Risperidone experiencing a fast or irregular pulse should immediately contact their doctor. (Id. at 25-26.) This Court finds that plaintiff's reference to this document attached to his complaint does not discredit plaintiff's claim that taking Risperidone could cause plaintiff death based on his heart condition.

Defendant is also correct that plaintiff attaches a medical record to his complaint, dated June 19, 2019, indicating that plaintiff was previously prescribed Risperidone. (Id. at 15.) However, this medical record does not state when plaintiff was previously prescribed Risperidone. It is also possible that plaintiff did not have a heart condition at the time of his past Risperidone prescription. For these reasons, this Court does not find that plaintiff's prescription for Risperidone at an unknown time in the past demonstrates that defendant's request to have plaintiff involuntarily medicated with Risperidone at the time plaintiff filed the complaint did not cause an imminent danger of serious physical injury to plaintiff.

This Court also observes that in the complaint plaintiff alleges that he has a personality disorder and Risperidone does not treat personality disorders. In support of this claim, plaintiff refers to the document from the National Institutes of Health/National Library of Medicine discussing Risperidone. This document states that Risperidone is used to treat a variety of symptoms. (Id. at 22.) Plaintiff also refers to the document attached to his complaint dated June

13

19, 2019 describing plaintiff's mental health history. (Id. at 15.) This document does not demonstrate that plaintiff did not suffer from symptoms that could not be treated with Risperidone at the time plaintiff filed the complaint. This Court finds that the document from the National Institutes of Health/National Library of Medicine and the document dated June 19, 2019 describing plaintiff's mental health history do not demonstrate that plaintiff faced imminent danger of serious physical injury from being involuntarily medicated with Risperidone at the time he filed the complaint.

Defendant also argues that plaintiff did not demonstrate that the prescription of Risperidone would cause him substantial danger because at the time he filed his complaint, plaintiff was not yet prescribed Risperidone. (ECF No. 29 at 14.) Defendant argues that before Risperidone could be prescribed, plaintiff was required to appear at a Section 2602 hearing. (Id.) Defendant argues that the possible side effects of a medication that might be involuntarily prescribed in the future by an administrative law judge, not defendant, and only after a due process hearing in front of a neutral and unbiased tribunal that makes the determination by clear and convincing evidence that plaintiff should be prescribed the medication for his own good, created no threat of serious physical injury to plaintiff. (Id.) Defendant also observes that plaintiff recently filed a motion for a preliminary injunction and temporary restraining order wherein he claimed that on January 24, 2024, a hearing was held at CSP-Sac pursuant to Penal Code § 2602. (Id.) Plaintiff conceded in this motion that the administrative court denied the request, brought in part by defendant Grubbs, for his involuntary medication with Risperidone. (Id.) Defendant argues that this demonstrates that the "imminent danger" plaintiff alleged in his complaint was at best speculative and hypothetical. (Id.)

This Court above addressed defendant's argument that plaintiff cannot meet the imminent danger exception because administrative law judges review requests for involuntary medication. This Court is not persuaded by defendant's argument that plaintiff does not meet the imminent danger exception because plaintiff was not prescribed Risperidone at the time plaintiff filed the complaint. Section 1915(g) requires that the danger be imminent, not that it have occurred. In addition, the plain language of the imminent danger clause in Section 1915(g) indicates that

14

imminent danger is to be assessed at the time of filing of the complaint. See Andrews, 493 F.3d at 1053 ("In other words, the availability of the exception [to Section 1915(g)] turns on the conditions the prisoner faced at the time the complaint was filed, not at some earlier or later time."). Under this approach, the conditions that existed at some earlier or later time are not relevant. See Andrews, 493 F.3d at 1053 & n. 5 (post-filing transfer of prisoner out of prison at which danger allegedly existed may have mooted request for injunctive relief against alleged danger but did not affect § 1915(g) analysis). Accordingly, the administrative law judge's alleged decision on January 24, 2024 denying defendant Grubbs' request to involuntarily medicate plaintiff does not demonstrate that plaintiff failed to meet the imminent danger exception to Section 1915(g) at the time plaintiff filed his complaint on November 26, 2023.

This Court finds that plaintiff meets the imminent danger exception to Section 1915(g) based on the following claims in plaintiff's complaint filed November 26, 2023: (1) defendant Grubbs sought a court order for plaintiff to be involuntarily medicated with Risperidone at a Section 2602 hearing to be held on November 29, 2023; and (2) plaintiff has a heart condition and a side effect of Risperidone is fast or irregular pulse that can cause death to plaintiff. Accordingly, defendant's motion to revoke plaintiff's in forma pauperis status should be denied.

V.  **PLAINTIFF'S CLAIMS AND REQUEST TO AMEND HIS COMPLAINT**

   A.  **Request for Injunctive Relief**

      1. Legal Standard re: Mootness

A district court may sua sponte raise the issue of lack of subject matter jurisdiction. See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) ("[C]ourts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). Article III of the United States Constitution limits federal judicial review to actual cases or controversies. U.S. Const. art. III, § 2. The Supreme Court has held that the case-or-controversy requirement exists throughout all stages of federal judicial proceedings, both trial and appellate. See Spencer v. Kemna, 523 U.S. 1, 7 (1998). Accordingly, "parties must continue to have a 'personal stake in the outcome' of the lawsuit." Lewis v. Continental Bank Corp., 494 U.S. 472, 478 (1990) (quoting City of Los Angeles v.

Lyons, 461 U.S. 95, 101 (1983)). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer, 523 U.S. at 7 (quoting Lewis, 494 U.S. at 477)). If a party is unable to maintain a "personal stake" in the outcome of the lawsuit, the claim becomes moot. Id. at 7–8; see also Bishop v. Paiute Tribe v. Inyo County, 863 F.3d 1144, 1155 (9th Cir. 2017) ("A federal court lacks jurisdiction to hear a case that is moot.").

There is an exception to the mootness doctrine for situations that are "capable of repetition yet evading review." United States v. Brandau, 578 F.3d 1064, 1067 (9th Cir. 2009) (quoting Gerstein v. Pugh, 420 U.S. 103, 111 n.11 (1975)). For the controversies "capable of repetition, yet evading review" exception to the mootness doctrine to apply, a plaintiff must show: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration," and (2) "there is a reasonable expectation that the same complaining party will be subject to the same action again." Kingdomware Techs., Inc. v. United States, 579 U.S. 162, 170 (2016) (internal citations omitted). Relevant to the instant matter, the possibility that an incarcerated plaintiff could be transferred back to a specific prison is generally not substantial enough to warrant application of this mootness exception. See Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001) (citation omitted) ("[W]hen a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility."); Dilley v. Gunn, 64 F.3d 1365, 1369 (9th Cir. 1995) (holding a prisoner's "claim that he might be transferred back [to the same prison] some time in the future [was] 'too speculative' to prevent mootness").

In determining whether subject matter jurisdiction exists, this Court may consider pleadings outside of plaintiff's complaint. See Land v. Dollar, 330 U.S. 731, 735 n. 4 (1947), overruled on other grounds, Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949) (when a question of the district court's jurisdiction is raised, either by a party or by the court on its own motion, "the court may inquire by affidavits or otherwise, into the facts as they exist.").

2. Analysis re: Mootness

For the following reasons, this Court recommends dismissal of plaintiff's request for

injunctive relief, made with respect to both plaintiff's Eighth Amendment and retaliation claims, as moot.

As discussed above, the only relief plaintiff seeks in his complaint is the postponement of the Section 2602 hearing requested by defendant Grubbs and an order to show cause why the hearing is justified. Plaintiff's claim for injunctive relief is moot because plaintiff is no longer housed at CSP-Sac, where defendant Grubbs is located and the alleged deprivations occurred. In addition, the specific hearing plaintiff challenged has passed and at that hearing, according to plaintiff, the administrative law judge rejected defendant Grubbs' request to have plaintiff involuntarily medicated with Risperidone.

In the response to the order to show cause, plaintiff appears to allege that an administrative law judge granted a request by prison officials at the California Medical Facility, and possibly requests by prison officials at Kern Valley State Prison and California State Prison-Los Angeles, for plaintiff to be involuntarily medicated. Plaintiff claims that his doctor at California State Prison-Los Angeles, where plaintiff is currently housed, declined to place plaintiff on the strong medication prescribed by Dr. Virk at the California Medical Facility. Plaintiff does not claim that he was involuntarily medicated with Risperidone at Kern Valley State Prison, the California Medical Facility or California State Prison-Los Angeles. Plaintiff is currently prescribed Zyprexa.

Plaintiff's claims regarding his involuntary medication at Kern Valley State Prison, the California Medical Facility and California State Prison-Los Angeles suggest that the circumstances surrounding plaintiff's involuntary medication are somewhat fluid, which further supports the finding that plaintiff's claim for injunctive relief against defendant Grubbs at CSP-Sac is moot. Accordingly, plaintiff's request for injunctive relief raised in the complaint should be dismissed as moot.

**B. Plaintiff's Request to Amend His Complaint**

In his response to the order to show cause, plaintiff argues that this action is not moot because he can amend his complaint to state a claim for damages. Good cause appearing, plaintiff is granted thirty days from the date of the order by the district court adopting these

findings and recommendations to file an amended complaint seeking money damages as to his Eighth Amendment and retaliation claims against defendant Grubbs. The amended complaint shall address the outcome of the Section 2602 hearing conducted at CSP-Sac on January 24, 2024.

In the response to the order to show cause, plaintiff suggests that he may seek to amend his complaint to raise claims against prison officials at Kern Valley State Prison, the California Medical Facility and California State Prison-Los Angeles regarding being involuntarily medicated. For the following reasons, this Court finds that plaintiff's claims against prison officials at Kern Valley State Prison, the California Medical Facility and California State Prison-Los Angeles regarding being involuntarily medicated would not be properly joined with plaintiff's retaliation and Eighth Amendment claims for damages against defendant Grubbs.

Federal Rule of Civil Procedure 20(a)(2) allows permissive joinder of defendants if (1) there is any right to relief "asserted against them jointly, severally, or in the alternative with respect to or arising out of the same, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); see Patagonia, Inc. v Walmart, Inc., 2023 WL 3564772, at *2 (C.D. Cal. May 4, 2023) (quoting League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 558 F.2d 914, 917 (9th Cir. 1977)) ("We start with the premise that [Rule 20] regarding permissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits."). "Proper joinder under Rule 20 requires that the 'parties must assert rights, or have rights asserted against them, that arise from related activities--a transaction or an occurrence or a series thereof.'" Patagonia, Inc., 2023 WL 3564772, *2 (quoting Coal. for a Sustainable Delta v. U.S. Fish & Wildlife Serv., 2009 WL 3857417, at *2 (E.D. Cal. Nov. 17, 2009) (citation omitted)).

"The purposes of joinder under Rule 20(a) are 'to promote judicial economy, and reduce inconvenience, delay, and added expense' by permitting a plaintiff to join claims that are substantially based on the same basic set of facts." Patagonia, Inc., 2023 WL 3564772, at *2 (quoting Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997)). "These purposes are not

1  served 'when the claims are similar in nature or share some commonalities but are predicated on
2  distinct factual scenarios,' Flauta v. Johnson & Johnson, 2013 WL 12138986, at *3 (C.D. Cal.
3  Jan. 10, 2013), because, in such a scenario, a court is required to view each claim in 'a separate
4  and individual light,' Coughlin, 130 F.3d at 1351." Patagonia, 2023 WL 3564772, at *2.

5  Plaintiff's claims against prison officials at Kern Valley State Prison, the California
6  Medical Facility and California State Prison-Los Angeles regarding being involuntarily
7  medicated appear to be predicated on factual scenarios that are distinct from the facts related to
8  plaintiff's retaliation and Eighth Amendment claims against defendant Grubbs.  As discussed
9  above, plaintiff alleges that defendant Grubbs sought to have plaintiff involuntarily medicated
10 with Risperidone in retaliation for plaintiff's legal activities, although an administrative law judge
11 denied defendant Grubbs' request for plaintiff's involuntary medication.  In contrast, while
12 plaintiff appears to claim that he was involuntarily medicated at Kern Valley State Prison, the
13 California Medical Facility and California State Prison-Los Angeles, plaintiff does not claim that
14 he received Risperidone at these prisons.  Also, in contrast to plaintiff's claims regarding
15 defendant Grubbs, the requests for plaintiff to be involuntarily medicated at Kern Valley State
16 Prison, the California Medical Facility and California State Prison-Lancaster were apparently
17 granted by administrative law judges.  Plaintiff also claims that his doctors at the California
18 Medical Facility and California State Prison-Los Angeles had a difference of opinion regarding
19 what medication to prescribe plaintiff.  The differences between these claims demonstrate that
20 plaintiff's claims against defendant Grubbs, and plaintiff's claims against prison officials at Kern
21 Valley State Prison, the California Medical Facility and California State Prison-Los Angles, are
22 predicated on distinct factual scenarios.  Accordingly, plaintiff should not raise his claims
23 regarding involuntary medication at Kern Valley State Prison, the California Medical Facility and
24 California State Prison-Los Angeles in the amended complaint filed in the instant action.
25 Plaintiff's claims regarding involuntary medication at Kern Valley State Prison, the California
26 Medical Facility and California State Prison-Los Angeles should be raised in separate actions.  If
27 plaintiff raises claims regarding involuntary medication at Kern Valley State Prison, the
28 California Medical Facility and California State Prison-Los Angeles, this Court will recommend

that these claims be severed from the instant action.

## VI. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to amend court records to reflect plaintiff's current address at California State Prison-Los Angeles, P.O. Box 4670, Lancaster, California, 93593;

2. Plaintiff is granted thirty days from the adoption of these findings and recommendations by the district court to file an amended complaint raising his Eighth Amendment and retaliation claims against defendant Grubbs and a request for damages only; defendant shall not respond to the amended complaint until ordered by this Court;

IT IS HEREBY RECOMMENDED that:

1. Defendant's motion to revoke plaintiff's in forma pauperis status (ECF No. 29) be denied; and

2. Plaintiff's request for injunctive relief contained in his complaint be dismissed as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 21, 2024

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Ham2770.57(2)

2